When you are prepared, you may proceed. May it please the court, counsel, I'm Dave Risk and I'm here on behalf of Cynthia Mitteness and I'm a participant in this case. Your honors, Ms. Mitteness had her first sexual experience at age 16. She was raped. Her rapist laughed at her while she cried. She didn't tell anyone for a long time. Years later, in her early 20s, she tried to get into therapies to help her move past it and her therapist told her that she thought Cynthia had been molested by her father. Cynthia didn't see it that way and she never went back to therapy. Her relationship with her father was far from perfect, but as she recalls it, it was not that kind of a relationship. There were certainly problems. Her father would use a hammer to slaughter rabbits in front of her when she was young and then he would string up the carcasses in the yard. He would throw things when he was angry, sometimes big things. Counsel, we've read the brief and understand the horrible facts on all sides of this matter, but I think you'd use your time better if you'd focus more on the actual sentencing issues that we face, such as the undue influence and other matters. Thank you, Your Honor, and I just wanted to make certain the court had fresh in its mind a good understanding of who my client was as a significant part of my argument is about our position that the sentence was substantively unreasonable. Of course, there are facts that cut the other way as well concerning the conduct towards the victim. Absolutely there are, Your Honor, and it's exactly why I think it's so important to examine the facts from both sides because, frankly, as they relate to the victim themselves, Your Honor, and I don't want to pretend that there's some calculus to these kind of cases because they're all atrocious, but the reality is the physical touching and the harm that happened to this victim was far less than what we see in many other cases where people receive sentences half as much as what my client received. There were, and again... I think that may be a good segue to the undue influence, the relationship between a mother and a daughter. Absolutely, Your Honor, and that, I think, is a significant part of this case. An issue that I want the court to understand is that our perspective is the sentencing court gave significant weight to an improper factor. And part of the transcript, and again, I appreciate the court has these, and I can skip the quotes if the court wants, but the reality is that the court talked about all the different reasons why the court would... In other words, a reason that the court would normally give a lesser sentence. But in this case, there are some cases the court said there are things that are so serious and so dangerous that no matter who the offender is, kind of the phrase second chance doesn't apply, and in my view, this is one of those cases, or one of those crimes, excuse me. So why was the court so offended? And there was discussion at sentencing about this, but the court said specifically, it's not so shocking to us because you're the mother. It's so shocking because you're the parent. In other words, because my client was the parent, the court put this in a different perspective and said, well, this case is so bad because you're the parent that we're not going to look at all the factors we'd normally look at. The court wouldn't look at all the factors she normally would. The court even said would normally be persuasive to her. But it's because my client was the parent. The reason why I say that's an improper... It doesn't mean that the court didn't consider them. Your Honor, the court said that these things would normally be persuasive. I think the court said because of this one factor, and this is not a direct quote, but in general the court said because of this one factor, because you're the parent, I'm not going to change my mind even though I normally would have. So it's this one factor, being the parent, that gave the significant impetus in this case. So why do we say that's an improper factor? Because it's already accounted for in the guidelines. The guidelines already gave my client a two-point enhancement because of being the parent. And why is a two-point enhancement so significant? Well, my client, even after the three-point adjustment for cooperation, was still only two points away from the top of the guidelines. They end at 43. After her three-point adjustment down, she was at 41. Two points puts her at a life sentence. And that's for a person who was 49 years old, who had absolutely no history of any criminal anything, no arrests, no probation, no nothing in her entire life, until at age 49, while she was, according to the psychologist and according to the court, a broken woman. The psychologist found her to be very naive, and I don't remember the exact quote, but she was extremely naive, a broken woman. And this woman, without any problems ever in her lifetime, who was, from my perspective, groomed by a pedophile with four prior convictions, this woman, because she was the parent, the court would not make any adjustment, any variance downward that the court said she normally would have given these factors. That's why the sentence of 324 months is substantively unreasonable. And, again, not to try and get into the calculus of this crime versus another crime, but the reality is that this court sees many cases where the victim is victimized in a much more significant way, albeit not by the parent. So is there anything specifically in the guidelines that tells us it's prohibited double counting to consider both the parental factor as well as undue influence? So, Your Honor, the double counting argument regarding parenting and undue influence, is that? Yes. So, Your Honor, the guidelines as they apply here, the specific statutory text, I believe, is silent as to whether or not there can be double counting or not in general. But it's rather these particular circumstances that we don't look at the guidelines,  talking about when it is or is not double counting. And that brings us back to United States v. Hippenbecker from 1997, which talks about, in general, what is double counting. Double counting, quoting from the case, Hippenbecker goes on to say, In other words, according to Hippenbecker, what the commission tells us is one part of the test. But if they don't tell us, and in this case, they specifically do not tell us that it's double counting. I would say it's double counting under Hippenbecker, unless the commission has intended the result. And if it's silent, I don't think you can say they intended the result. I think you're misusing the term double counting. I think double counting refers to the situation where there's arguably two or three guideline adjustments that could apply to an offense, and you use multiple adjustments to increase the guideline. I don't think we've ever said, for instance, that a judge who says, I'm giving you a higher sentence because you have a horrible criminal record, that we say, well, you can't do that because criminal history is already accounted for. I think judges do this every day. There are factors that they consider and give weight to. And that's not double counting. And so, Your Honor, if I can clarify our position, I apologize if I was not clear. In reference to whether or not this was a substantially unreasonable sentence, that's a whole different part of our argument. But rather, with regard to whether or not the guidelines were properly calculated in the first place, that's where a double counting argument comes in. And it's in reference specifically to whether or not it is appropriate to use the parent enhancement when the defendant is a parent, as well as the undue influence. Don't they account for different harms? Well, I think one has to do with relationship. The other has to do with the actual undue influence. You can have undue influence. Undue influence can be asserted or affected by an individual that's not a parent. Absolutely, Your Honor. And I guess the defense position here is that in this case, factually, they rely on the same concepts. Although the court's absolutely right. In fact, typically, our position would be undue influence would be someone who's not a parent. Because if it's that influence of a parent, then that's the parenting enhancement. And when you try and use both, that's the double counting. So what we're saying is factually here, those two things are, in fact, double counting. I'm not saying they always have to be double counting. Well, I guess what I'm saying is when you're talking about double counting in the sense that you're arguing it, don't you look at the harms that are being addressed, the harm that's being addressed by each of the enhancements? And isn't it fair to say that there is a distinct harm based upon the parental status of being a parent that's taken into account that's separate from the distinct harm of whether undue influence was present? And I absolutely see the court's perspective. The notion that as a parent, when you victimize your child, that's a different kind of harm. And I appreciate exactly what the court's saying. I don't think that's what's going on here, however. Because, in fact, the undue influence in this particular case is not separable from the parenting aspect of it. In other words, the harm at issue is the way in which my client influenced her daughter. And that's part and parcel in these facts of the fact that she was the parent. The court, in finding that undue influence applied, said, I do find by preponderance of the evidence that the government has established that the defendant did in this case, after closely considering all the facts, unduly influence her child to engage in prohibited sexual conduct by really overriding the will and physical resistance of her child, encouraging her, inducing her, enticing her. And the court goes on. But the point being, it's all about the relationship, the fact that it is the child, and that's the harm here. Well, it wasn't just the relationship. It was the techniques used to get the child's participation into those acts with the perpetrator. Correct, Your Honor. The person committing those acts toward the child would not have had to be the parent. Understood, Your Honor, in a way. But I would say factually here they had to have been the parent, because only the parent would have that kind of access and be able to do it. But it's not factually impossible. It's not, but in this case. You could have a coach, you could have a teacher, you could have any number of other. Absolutely, Your Honor, it is possible. I'm not saying in all cases you can't use it, but here those things are not separable. The facts are not separable from the fact that she was the parent, and that's why we believe it's double counting. And I appreciate I'm into my rebuttal time, so I'll take it up from there. Thank you, Your Honors. Thank you, Mr. Risk. Mr. Quickbaum. Good morning. May it please the Court. The defendant in this case offered up her 9-year-old daughter to a convicted sex offender so that this man could sexually abuse that little girl. The sentence at the bottom of the advisory guideline range was certainly within the district court's wide discretion, and there were no errors in calculating the guideline range. I'll start with the undue influence enhancement where the court left off. These are separate harms. The parent enhancement and the undue influence enhancement target separate things. The parent enhancement applies automatically based on a defendant's status. If a defendant is part of this conspiracy and is a parent, then she gets the enhancement simply by virtue of her status. So, for example, when the defendant brought her daughter from Minnesota to Iowa so that the sex offender could sexually abuse the girl, that was sufficient to get the parent enhancement. The undue influence enhancement was based on additional conduct that the defendant engaged in that involves a separate harm. So, for example, when they are in a hotel room and the defendant is shaving the genitals of the sex offender and tells her 9-year-old daughter to help, and the daughter says no, she doesn't want to, and the defendant grabs this little girl's hand and places it on this man's penis, the district court found that that compromised the voluntariness of this 9-year-old's actions. I can't imagine any court anywhere disagreeing with that conclusion. It's plainly true, and that's the legal standard for the undue influence enhancement. It's a different conduct than simply being the parent. It is far more aggravating conduct than simply being the parent, and it is worthy of an additional enhancement. I will also note that under the guidelines, because of the age difference between the defendant and the victim in this case, there's a rebuttable presumption that this enhancement applies. I have not heard any evidence, either in the trial record, not in the trial record, but at the sentencing hearing or this morning, that would rebut the presumption that when you physically cause a 9-year-old to touch. That goes beyond undue influence to coercion, to actual physical coercion. Absolutely. It's assault and coercion. That's probably the most blatant example. There are other examples in the record, but there's no doubt that there was additional conduct here, separate from merely being a parent, that warranted that enhancement. We're not aware of any court saying that under circumstances remotely like these, there's double counting here. So I think that issue is a straightforward one. Counsel didn't address the use of the computer, would you, and why that's affirmable? Yes, Your Honor. So the defense argument rests on Application Note 4 to this particular guideline. That note says that a person has to use a computer to communicate directly with the minor or someone who has custody over the minor. There are a couple issues here. First, the guideline itself has two parts, and Application Note 4 only applies to one of those parts. So that's the first issue basis on which the court could affirm. The Application Note does not apply to Part B of the guideline, which says that the enhancement applies if someone uses a computer to entice or encourage a person to engage in prohibited sexual conduct with the minor. So in other words, if I use a computer to reach out in the world to another adult and to entice and encourage that adult to have sex with a minor, then I don't have to communicate directly with the minor. I'm communicating with someone else to get him to have sex with that minor. This court held in the United States against Gibson that the Application Note does not apply under that scenario. We cited Gibson in our brief. The defense did not acknowledge Gibson in their reply, but it really controls this issue because what the defendant did here was she pressured her 9-year-old daughter to pose for nude photos. The defendant then takes those nude photos of her daughter on an iPad Mini, which is a computer, and then she uses that iPad to send those photos to the sex offender, and the purpose of doing that was to entice or encourage the sex offender to sexually abuse her daughter, which is exactly what happens because they then meet up so that he can commit that conduct. That's a textbook case of conduct that is covered by this enhancement, and there does not have to be direct communication with the minor. But even if the court wanted to affirm on the other subpart of the guideline, which is Part A, that applies when the offense involves the use of a computer to essentially persuade or entice the travel of the minor to engage in sexual conduct, and there you do have to use a computer to communicate directly with the minor. But the key phrase here is that the offense must involve the use of a computer. Well, the offense in this case was a conspiracy. That's what the defendant pled guilty to. It was a conspiracy between her and the sex offender to transport this minor, and the conspiracy without question involved the use of a computer to communicate directly with the minor. As part of this conspiracy, the defendant and the sex offender conspired to cause the 9-year-old to communicate with the sex offender over a computer so that they could then entice this girl to travel so that she could be sexually abused. Those conversations happened over the course of months. The sex offender is chatting with this victim on the computer. He sends her photos of himself ejaculating. The defendant is present. She tells her daughter that watching him ejaculate is a good thing. This is all part of the grooming process so that they can essentially break this girl down and get her to a place that they can cause her to travel so that this man can have sex with her. So there's no question that the conspiracy involved use of a computer to communicate directly with the minor. The defendant is directly involved in that conduct. She is responsible for the actions of her co-conspirator. Certainly under any sort of a Pinkerton theory, she's responsible for his actions. She's also responsible for them under the definition of relevant conduct. They're acts of her co-conspirator and co-defendant that are known to her, that are in furtherance of the conspiracy. Indeed, these communications over a computer are ones that she is present for and encouraging and enabling. And so there's no question that the offense, the conspiracy, involved use of a computer to directly communicate with the minor, and the enhancement applies for that reason as well. I will turn finally to the reasonableness of the sentence. I think the defense position can't possibly get very far because, as I understand the argument, it's that the district court considered an improper factor, namely the fact that the defendant was a parent. Well, as Judge Malloy pointed out, there are many factors that are included in a guideline calculation that a district court might decide are simply very aggravating. And so the defendant got a two-level enhancement in this case for being a parent. But there's certainly nothing improper about determining that when a parent commits the conduct of the defendant committed in this case that it is particularly aggravating, maybe even more than two levels aggravating. But I don't think the court even needs to get to that issue because the fact of the matter is, is that this defendant was sentenced at the bottom of the guideline range. So we acknowledge that the parent enhancement is accounted for by the guidelines, and she got a guideline sentence. So we're not aware of any court anywhere saying that a guideline sentence is improper when the district court considers facts that are accounted for by the guidelines. That's why you get a guideline sentence. The other, I'm not going to rehearse the facts of this case. They are, frankly, too vile to repeat in this courtroom. But the defendant's conduct in this matter over the course of months was, I would submit that the only proper response to it is one of moral outrage. And the district court in this case was very careful. She noted that there's a danger of having an emotional reaction to a case like this. And she specifically said that she was guarding against having that sort of emotional reaction. She discussed, the district court discussed in great detail, the mitigating facts about the defendant and the aggravating facts and made a judgment that in this case the aggravating facts outweighed the mitigating ones. That is the exact sort of exercise of discretion that is within the particular province of the district court. And it cannot be substantively unreasonable to sentence a woman who offers up her 9-year-old in this way to the bottom of the guideline range. We would ask the court to affirm this sentence. Thank you. Thank you, Mr. Quickbaum. Mr. Risk, your rebuttal. Thank you, Your Honors. With regard to the argument about it being substantively unreasonable, whether or not it was significant weight to an improper factor, or the court used clearly erroneous facts such as the court's finding that she, being my client, is personally and actively leading this conspiracy, versus weighing factors improperly, looking at the notion of manipulated versus coerced. Whatever it is, we have a substantively unreasonable sentence because, again, my client for nine months was groomed by the sex offender, someone who four different times had had convictions related to sex offenses in children. And over the course of nine months, when she was dealing with depression, when she was not fit, when she was strikingly naive, during this time frame, over the course of nine months, he got into her head and got her to do something that was otherwise completely out of character for her. Counsel, now you're arguing for us to re-weigh the facts. I'm asking this court to look at the facts and find that the court's decision was substantively unreasonable based on those facts. And one of them, this notion of being manipulated versus coerced, we had findings that talked about that she was a female coerced sex offender, meaning that— Counsel, when you read some of the transcript of the conversations, it's understandable why someone might not reach the conclusion you advocate. That's exactly what I'm talking about, Your Honor. When we look at the transcript, we're talking about the messages back and forth between the two, there are two different sets of them. There is the facts where they're talking about historically what happened, and those are terrible. But the really vile facts that we read are the ones where she is fantasizing with him about an attempt, as it was her burden to, quote-unquote, get him off. She said some horrible things in order to help him with his fantasy life, because she'd been groomed to do that over the course of nine months. Just briefly, though, with regard to use of a computer, Your Honor, the notion that the government says, well, we can use the other subdivision because my client reached out to this sex offender and enticed him under Gibson— Your Honor, again, for nine months, he was reaching out to her, getting into her head, and the notion that she was trying to entice him to rape her daughter, I think, is a difficult position for the government to take at the very best, when, in fact, he was using the computer to groom her. Now, from their other perspective, well, she's responsible for the actions of her co-defendant. That is a different position to take, and that's exactly why I asked the court to look at the fact that this woman, who is a victim in her own right, who's not mentally well, who was groomed for nine months, did, after all of that, do things that she is horrified by. She couldn't even, at first, realize that she'd done those things because it was so bad to her that she just literally had to block it out. She is incredibly remorseful. She feels horrible about what she did, and she did it because this man groomed her, just like he then, with my client, groomed the nine-year-old. Thank you, Your Honors. Thank you, Mr. Ruiz. Court, thanks both counsel for your presence and argument this morning, and the briefing that you've submitted will take your case under advisement and render a decision in due course. Thank you. Madam Clerk, would you call Case No. 3 for the morning?